FILED

2019 FEB 22 PM 4:07

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY _____

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

January 2019 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>       v.<br><br>DAVID SOLANO and<br>DARIO EDGARDO VERDUGO-<br>  AMERICANO,<br><br>       Defendants. | CR No. 19-CR00103-FMO<br><br>I N D I C T M E N T<br><br>18 U.S.C. § 1956(h): Conspiracy to<br>Launder Money; 18 U.S.C.<br>§§ 1956(a)(1)(A)(i), (a)(1)(B)(ii):<br>Money Laundering; 18 U.S.C.<br>§ 2(a): Aiding and Abetting] |

The Grand Jury charges:

INTRODUCTORY ALLEGATIONS

At all times relevant to this Indictment:

1. A citizen of another country, including Mexico, was prohibited from purchasing and obtaining title for an aircraft registered in the United States.

2. The export of goods from the United States, including aircraft parts, required the payment of export duties.

3. A Cessna 210 aircraft, and other aircraft, were capable of landing on unimproved landing strips, including dirt roads, and were sometimes referred to as "bush planes."

4.   The Federal Aviation Administration ("FAA") registered aircraft in the United States and assigned numbers to be prominently displayed on the tail of an aircraft as a method of registration.

5.   Persons who wished to export aircraft previously registered with the FAA were required to file a document requesting the de-registration of the aircraft from FAA records.

6.   These Introductory Allegations are hereby incorporated by reference in Counts One through Seven of this Indictment as though fully set forth therein.

COUNT ONE

[18 U.S.C. § 1956(h)]

## A.    THE OBJECTS OF THE CONSPIRACY

Beginning on an unknown date, and continuing until on or about August 12, 2017, in Los Angeles County, within the Central District of California, and elsewhere, defendants DAVID SOLANO ("SOLANO") and DARIO EDGARDO VERDUGO-AMERICANO ("VERDUGO"), and others known and unknown to the Grand Jury, conspired and agreed with each other to knowingly and intentionally commit the following offenses:

Knowing that property involved in financial transactions represented the proceeds of some form of unlawful activity, and which property was, in fact, the proceeds of specified unlawful activity, that is, the unlawful distribution of controlled substances, in violation of Title 21, United States Code, Section 841(a)(1):

(1) conducting and attempting to conduct financial transactions with the intent to promote the carrying on of said specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i); and

(2) conducting and attempting to conduct financial transactions knowing that the transactions were designed in whole or in part to avoid a transaction reporting requirement under federal law, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(ii).

B.    MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE
ACCOMPLISHED

The objects of the conspiracy were to be accomplished in substance as follows:

Purchase, Sale and Export of Aircraft and Aircraft Parts

1.    Defendant VERDUGO, and other unindicted co-conspirators in Mexico, would contact defendant SOLANO in the United States to purchase Cessna 210 aircraft for export to Mexico.

2.    Unindicted co-conspirators in Mexico would contact defendant SOLANO in the United States to purchase airplane parts for transfer and export to Mexico.

3.    Defendant SOLANO would locate Cessna 210 aircraft, and other "bush" planes, and airplane parts, in the United States for sale to Mexico purchasers.

4.    Unindicted co-conspirators would sell illegal drugs, including methamphetamine, cocaine and marijuana, in California, Arizona, and elsewhere.

5.    Defendant VERDUGO would deposit cash, and direct others to deposit cash, into bank accounts controlled by defendant SOLANO for the purchase of airplanes and airplane parts.

6.    Defendant VERDUGO would direct unindicted co-conspirators to provide quantities of narcotics proceeds to defendant SOLANO at clandestine locations in Los Angeles.

7.    Defendant SOLANO would receive quantities of cash at clandestine locations for the purchase of aircraft and aircraft parts.

8.    Defendant SOLANO would deposit quantities of cash into bank

accounts in his name, or in the name of a company owned by him, "Solano Aircraft Maintenance," and in a manner intended to avoid bank reporting requirements, for the purchase of aircraft and aircraft parts for export to Mexico.

9.   Defendant SOLANO would purchase aircraft in the United States as a "straw purchaser" of the aircraft for export to buyers in Mexico.

10.   Defendant SOLANO would export to Mexico aircraft purchased in the United States.

11.   Defendant VERDUGO, at the Nogales, Mexico, airport would facilitate the re-registration of aircraft in Mexico that were purchased by defendant SOLANO in the United States for Mexico buyers.

C.   OVERT ACTS

On or about the following dates, in furtherance of the conspiracy, and to accomplish the objects of the conspiracy, defendants SOLANO and VERDUGO, and others known and unknown, committed various overt acts, within the Central District of California, and elsewhere, including, but not limited to, the following:

Purchase and Sale of Cessna T210 Aircraft, Tail Number N6717R

1.   On July 19, 2011, defendant SOLANO deposited $3,500 in cash into Citibank Account Number #####-#427 in the name "Solano Aircraft Maintenance, LLC."

2.   On July 19, 2011, defendant SOLANO deposited $2,000 in cash into Citibank Account Number #####-#405 in the name "Solano Aircraft Services."

3.   On July 20, 2011, defendant SOLANO signed a contract for

the purchase of a Cessna T210 aircraft, tail number N6717R, and in the amount of $115,000.

4.    On July 23, 2011, defendant SOLANO deposited $5,960 in cash into Citibank Account Number #####-#427 in the name "Solano Aircraft Maintenance, LLC."

5.    On July 27, 2011, defendant SOLANO deposited $6,000 in cash into Citibank Account Number #####-#427 in the name "Solano Aircraft Maintenance, LLC."

6.    On July 27, 2011, defendant SOLANO deposited $8,000 in cash into Citibank Account Number #####-#405 in the name "Solano Aircraft Services."

7.    On July 30, 2011, defendant SOLANO deposited $8,000 in cash into Citibank Account Number #####-#427 in the name "Solano Aircraft Maintenance, LLC."

8.    On August 1, 2011, defendant SOLANO deposited $8,100 in cash into Citibank Account Number #####-#405 in the name "Solano Aircraft Services."

9.    On August 3, 2011, defendant SOLANO deposited $7,500 in cash into Citibank Account Number #####-#427 in the name "Solano Aircraft Maintenance, LLC."

10.    On August 3, 2011, defendant SOLANO deposited $6,000 in cash into Citibank Account Number #####-#405 in the name "Solano Aircraft Services."

11.    On August 4, 2011, defendant SOLANO caused a wire transfer of $50,000 from Citibank Account Number #####-#405, in the name "Solano Aircraft Services," to the escrow account for the purchase of the Cessna T210 aircraft, tail number N6717R.

12.   On August 5, 2011, defendant SOLANO caused a wire transfer of $30,000 from Citibank Account Number #####-#405, in the name "Solano Aircraft Services," to the escrow account for the purchase of the Cessna T210 aircraft, tail number N6717R.

13.   On August 5, 2011, defendant SOLANO caused a wire transfer of $5,600 from Citibank Account Number #####-#427, in the name "Solano Aircraft Maintenance, LLC," and to the escrow account for the purchase of the Cessna T210 aircraft, tail number N6717R.

14.   On August 9, 2011, defendant SOLANO deposited $5,000 in cash into Citibank Account Number #####-#427 in the name "Solano Aircraft Maintenance, LLC."

15.   On August 9, 2011, defendant SOLANO caused a wire transfer of $20,000 from Citibank Account Number #####-#405, in the name "Solano Aircraft Services," to the escrow account for the purchase of the Cessna T210 aircraft, tail number N6717R resulting in defendant SOLANO becoming the owner of the aircraft.

16.   On September 14, 2011, defendant SOLANO re-sold the Cessna T210 aircraft, tail number N6717R to "Martin Rivera-Palacios" in Culiacan, Sinaloa, Mexico, for $1.

17.   On September 14, 2011, defendant SOLANO signed a document with the FAA requesting to delist the Cessna T210 aircraft, tail number N6717R, from FAA aircraft rolls.

Purchase and Sale of Cessna TU206G Aircraft, Tail Number N206AG

18.   Between January 19, 2011 and December 2, 2011, defendant SOLANO identified a Cessna 206G aircraft, Tail Number N206AG, owned by Tom's Aircraft Maintenance, Inc., to be purchased by defendant SOLANO for a Mexico buyer.

7

19.    On December 2, 2011, defendant SOLANO received $70,000 from "Olea Rodriguez," by wire transfer from Mexico, and into a Citibank Account Number #####-#405 in the name of "Solano Aircraft Services."

20.    On December 12, 2011, defendant SOLANO issued check number 1526 from Citibank Account Number #####-#405, in the name of "Solano Aircraft Services," to "Tom's Aircraft Maintenance" in the amount of $35,000.

21.    On December 14, 2011, defendant SOLANO deposited $9,000 in cash into Citibank Account Number #####-#427, in the name of "SOLANO Aircraft Maintenance, LLC."

22.    On December 14, 2011, defendant SOLANO deposited $9,000 in cash into Bank of America Account Number #####-#266, in the name of "David Solano."

23.    On December 16 2011, defendant SOLANO opened Bank of America Account Number ######-#119 in the name of "Solano Aircraft Maintenance, LLC."

24.    On December 16, 2011, defendant SOLANO caused $10,000 to be electronically transferred from Citibank Account Number #####-#427, in the name of "David Solano Aircraft Maintenance, LLC," to an account in the name of "Tom's Aircraft Maintenance" for the purchase of a Cessna 206G Aircraft, Tail Number N206AG.

25.    On December 16, 2011, defendant SOLANO caused $25,000 to be electronically transferred from Citibank Account Number #####-#405, in the name of "Solano Aircraft Maintenance, LLC," to an account in the name of "Tom's Aircraft Maintenance" for the purchase of a Cessna TU206G Aircraft, Tail Number N206AG.

26.   On December 21, 2011, defendant SOLANO deposited $4,500 in cash, consisting of 45 $100 bills, into Citibank Account Number #####-#405 in the name of "Solano Aircraft Services."

27.   On December 21, 2011, at 2:18 p.m., defendant SOLANO deposited $4,500 in cash into Bank of America Account Number #####-#119 in the name of "Solano Aircraft Maintenance, LLC," at the Bank of America branch bank at 25435 Crenshaw Boulevard, Torrance, California.

28.   On December 21, 2011, at 2:49 p.m., defendant SOLANO deposited $4,500 in cash into Bank of America Account Number #####-#119 in the name of "Solano Aircraft Maintenance, LLC," at the Bank of America branch bank at 21700 Hawthorne Boulevard, Torrance, California.

29.   On December 21, 2011, at 2:27 p.m., defendant SOLANO deposited $4,500 in cash, consisting of 45 $100 bills, into Citibank Account Number #####-#427 in the name of "Solano Aircraft Maintenance, LLC."

30.   On December 21, 2011, at 3:04 p.m., defendant SOLANO deposited $4,500 in cash, consisting of 45 $100 bills, into Citibank Account Number #####-#427 in the name of "Solano Aircraft Maintenance, LLC."

31.   On December 22, 2011, defendant SOLANO caused $12,700 to be electronically transferred from Citibank Account Number #####-#427 in the name of "Solano Aircraft Maintenance, LLC" to an account in the name of "Tom's Aircraft Maintenance" for the purchase of a Cessna 206G Aircraft, Tail Number N206AG.

32. On December 22, 2011, Tom's Aircraft Maintenance sold a Cessna 206G aircraft, tail number N206AG, to "Solano Aircraft Maintenance, LLC."

33. On January 6, 2012, defendant SOLANO sent an email to a manager at Powell Aircraft Title Service stating that the Cessna 206G aircraft, tail number N206AG, would be re-sold to a buyer in Culiacan, Sinaloa, Mexico, and that a certificate of export should be prepared.

34. On March 12, 2012, defendant SOLANO received an email from a Mexico email address that stated that the Cessna 206G aircraft, tail number N206AG, should be identified as being sold to "Jose R. Martinez Lizarraga, Calle Benita Juarez 1394, Col. Miguel Hidalgo C.P. 80090, Culiacan, Sinaloa, Mexico."

35. On March 12, 2012, defendant SOLANO signed an Aircraft Bill of Sale for the Cessna 206G aircraft, tail number N206AG, stating that the aircraft was sold to "Jose R. Martinez Lizarraga" in Culiacan, Sinaloa, Mexico.

36. On March 13, 2012, defendant SOLANO received a confirmation message that the Cessna 206G aircraft, tail number N206AG, was deregistered from FAA aircraft rolls.

<u>Purchase and Sale of Cessna 210L Aircraft, Tail Number N2236S</u>

37. On June 4, 2013, unindicted co-conspirator number 1 ("CC-1"), in Tucson, Arizona, shipped approximately 143 kilograms of marijuana to a location in Buffalo, New York.

38.  On June 6, 2013, defendant VERDUGO caused $8,000 in drug proceeds to be deposited into Bank of America account number ####-#119 in the name of "Solano Aircraft Maintenance LLC," at a Bank of America branch in Nogales, Arizona.

39.  On June 13, 2013, defendant SOLANO signed a document, as an "agent for the buyer," Fernando Morales Acosta in Los Cabos, Mexico, for the purchase of a Cessna 210L aircraft, tail number N2236S, for $90,0000 from Northern Jet Sales LLC, Nashville, Tennessee.

40.  On June 13, 2013, defendant SOLANO caused $5,000 to be transferred from Bank of America account number ####-#119 in the name of "Solano Aircraft Maintenance, LLC," to an escrow account with Jetstream Escrow and Title Service, Inc., as a down payment for the purchase of the Cessna 210L aircraft, tail number N2236S.

41.  On June 14, 2013, defendant VERDUGO caused $4,000 in drug proceeds to be deposited into Bank of America account number ####-#119 in the name of "Solano Aircraft Maintenance, LLC,"  at a Bank of America branch in Nogales, Arizona.

42.  On June 19, 2013, defendant VERDUGO caused $8,000 in drug proceeds to be deposited into Bank of America account number ####-#119 in the name of "Solano Aircraft Maintenance, LLC," at a Bank of America branch in Nogales, Arizona.

43.  On June 19, 2013, at 6:41 p.m., in a wiretap recorded call, CC-1 called to defendant SOLANO and said, in coded language, that CC-1 had been told to meet with defendant SOLANO and give defendant SOLANO a quantity of cash.

44.  On June 19, 2013, at 7:41 p.m., in a wiretap recorded call,

defendant SOLANO gave CC-1 directions to meet at a coffee shop in Torrance, California.

45.  On June 19, 2013, CC-1 sent a text message to an associate that stated, "I am here with the Commandante," and provided the telephone number used by defendant SOLANO, and stated that the name was "David."

46.  On June 19, 2013, CC-1 provided defendant SOLANO with $50,000 in cash from drug proceeds.

47.  On June 19, 2013, CC-1 sent a text message to an associate that stated, "I delivered fifty."

48.  On June 24, 2013, defendant SOLANO caused $50,000 to be wire transferred from Bank of America account number ####-#119 in the name of "Solano Aircraft Maintenance, LLC," to an escrow account with Jetstream Escrow and Title Service, Inc., for the purchase of the Cessna 210L aircraft, tail number N2236S.

49.  On June 28, 2013, defendant SOLANO caused $10,000 to be wire transferred from Bank of America account number ####-#119 in the name of "Solano Aircraft Maintenance, LLC," to an escrow account with Jetstream Escrow and Title Service, Inc., for the purchase of the Cessna 210L aircraft, tail number N2236S.

50.  On July 2, 2013, defendant SOLANO caused $9,500 in drug proceeds to be deposited into Bank of America account number ####-#119 in the name of "Solano Aircraft Maintenance, LLC," at a Bank of America branch in Nogales, Arizona.

12

51.   On July 2, 2013, defendant SOLANO caused $16,000 to be wire transferred from Bank of America account number ####-#119 in the name of "Solano Aircraft Maintenance, LLC," to an escrow account with Jetstream Escrow and Title Service, Inc., for the purchase of a Cessna 210L aircraft, tail number N2236S.

52.   On July 3, 2013, defendant SOLANO caused $9,250 to be wire transferred from Bank of America account number ####-#119 in the name of "Solano Aircraft Maintenance, LLC," to an escrow account with Jetstream Escrow and Title Service, Inc., for the purchase of the Cessna 210L aircraft, tail number N2236S.

53.   On July 3, 2013, upon the closing of escrow, defendant SOLANO purchased the Cessna 210L aircraft, tail number N2236S.

54.   July 7, 2013, defendant SOLANO, in an email, informed the seller of the Cessna 210L aircraft, tail number N2236S, that he would be sending a pilot to pick-up the aircraft.

55.   On July 18, 2013, defendant SOLANO caused the Cessna 210L aircraft, tail number N2236S, to be deregistered from the FAA aircraft rolls.

Purchase and Sale of Cessna T210L Aircraft, Tail Number N5174V

56.   On August 21, 2013, CC-2 caused $8,000 in cash obtained from drug sales to be deposited into Bank of America account number ####-#119, in the name of "Solano Aircraft Maintenance, LLC," and at a Bank of America branch at 1601 West Valencia Road, Tucson, Arizona.

57.   On August 22, 2013, defendant SOLANO provided a check, drawn on Bank of America account number ####-#119 in the name of "Solano Aircraft Maintenance, LLC," in the amount of $5,000, to American Aircraft Sales, Hayward, California, as a down payment for

the purchase of a Cessna T210L aircraft, tail number N5174V.

58.    On September 18, 2013, defendant SOLANO signed an agreement to purchase a Cessna T210L aircraft, tail number N5174V, from American Aircraft Sales, and in the amount of $85,000.

59.    On October 31, 2013, defendant SOLANO deposited $9,000 in cash into Wells Fargo account number ####-##453, in the name of American Aircraft Sales.

60.    On October 31, 2013, defendant SOLANO deposited $8,900 in cash into Wells Fargo account number ####-##453, in the name of American Aircraft Sales.

61.    On October 31, 2013, defendant SOLANO caused a wire transfer to be made from Bank of America account number ####-#119, in the amount of $55,000, into Wells Fargo account number ####-##453, in the name of American Aircraft Sales, and for the purchase of a Cessna T210L aircraft, tail number N5174V.

62.    On November 4, 2013, defendant SOLANO sent an email to a representative of American Aircraft Sales that said, in Spanish, "I am sending to you the Wells Fargo deposit receipts," and that included deposit receipts each dated October 31, 2013 and in the amounts of $9,000 and $8,900.

63.    On November 6, 2013, defendant SOLANO caused a wire transfer to be made from Bank of America account number ####-#119, in the name of "Solano Aircraft Maintenance, LLC," in the amount of $7,200, into Wells Fargo account number ####-##453, in the name of "American Aircraft Sales," and for the purchase of a Cessna T210L aircraft, tail number N5174V.

64. On November 14, 2013, defendant SOLANO re-sold the Cessna T210L aircraft, tail number N5174V, to Jose Antonio Robles Reyes, Boulevard Madero 1290 OTE, Colonia Las Vegas CP 80090, Culiacan, Sinaloa, Mexico.

Purchase and Sale of Cessna 210L Aircraft, Tail Number N8487M

65. On November 22, 2013, an unindicted co-conspirator provided $6,500 in cash to Pierce Aircraft Sales, Visalia, California, as the down payment for the purchase of a Cessna 210L aircraft, tail number N8487M.

66. On November 25, 2013, defendant SOLANO signed an agreement for the purchase of a Cessna 210L aircraft, tail number N8487M, and for the stated purchase price of $115,000.

67. On December 10, 2013, defendant SOLANO deposited $9,500 in cash into Charles Schwab PNC bank account number ######033 for the purchase of a Cesna 210L aircraft, tail number N8487M.

68. On December 17, 2013, defendant SOLANO deposited $6,700 in cash into Charles Schwab PNC bank account number ######033 for the purchase of a Cessna 210L aircraft, tail number N8487M.

69. On December 20, 2013, defendant SOLANO deposited $9,300 in cash into Charles Schwab PNC bank account number ######033 for the purchase of a Cessna 210L aircraft, tail number N8487M.

70. On December 21, 2013, defendant SOLANO spoke by telephone with defendant VERDUGO and stated, in coded language, that the purchase price for the aircraft would be $115,000.

71. On December 23, 2013, in a telephone conversation, and in coded language, defendant VERDUGO told defendant SOLANO that defendant VERDUGO had informed a purchaser that the price of the

1 || airplane would be $115,000.

2       72.   On December 23, 2013, in a telephone conversation and in

3 || coded language, defendant VERDUGO told defendant SOLANO that a person

4 || would deliver $85,000 in cash to defendant SOLANO.

5       73.   On December 23, 2013, in a telephone conversation and in

6 || coded language, defendant VERDUGO told defendant SOLANO that the

7 || person delivering cash to defendant SOLANO would address defendant

8 || SOLANO by the code name "Mario."

9       74.   On December 23, 2013, in a telephone conversation and in

10 || coded language, defendant VERDUGO told defendant SOLANO that the

11 || purchase price for the airplane would be $115,000.

12       75.   On December 24, 2013, in a telephone conversation and in

13 || coded language, an unindicted co-conspirator contacted defendant

14 || SOLANO and addressed defendant SOLANO as "Mario."

15       76.   On December 24, 2013, in a telephone conversation and in

16 || coded language, an unindicted co-conspirator told defendant SOLANO

17 || that he wanted to deliver $85,000 to defendant SOLANO.

18       77.   On December 24, 2013, in a telephone conversation and in

19 || coded language, defendant SOLANO told the unindicted conspirator that

20 || he would be driving a GMC Sierra pick-up truck.

21       78.   On December 24, 2013, defendant SOLANO received $85,000

22 || from an unindicted co-conspirator in the parking lot near the

23 || Firestone Avenue off-ramp of Interstate 605 in Los Angeles.

24       79.   On December 24, 2013, defendant SOLANO deposited $9,000 in

25 || cash into Charles Schwab PNC bank account number ######033 for the

26 || purchase of a Cessna 210L aircraft, tail number N8487M.

27       80.   On December 27, 2013, defendant SOLANO caused a wire

28

transfer to be made from Bank of America account number ####-####-#119, in the amount of $70,000 to Charles Schwab PNC bank account number ######033 for the purchase of a Cessna 210L aircraft, tail number N8487M.

81.  On December 29, 2013, defendant SOLANO provided $4,000 in cash to Pierce Aircraft Sales for the purchase of a Cessna 210L aircraft, tail number N8487M, causing defendant SOLANO to take ownership of the aircraft.

82.  On December 30, 2013, defendant SOLANO directed a co-conspirator to fly the Cessna 210L aircraft, tail number N8487M, to Puerto Penasco, Sonora, Mexico.

83.  On January 3, 2014, defendant SOLANO recorded with FAA records the transfer of ownership of the Cessna 210L aircraft, tail number N8487M, from Pierce Aircraft Sales to his own name.

84.  On January 6, 2014, in a telephone conversation, and in coded language, defendant VERDUGO told defendant SOLANO that he needed to be paid for importing the Cessna 210L aircraft, tail number N8487M, to Mexico.

Receipt of $26,000 in Cash to Purchase Airplane Engine Starters

85.  On May 12, 2014, in a recorded conversation, an unindicted conspirator in Mexico directed defendant SOLANO to purchase engine starters for a Turbo Commander 980 Aircraft.

86.  On May 12, 2014, in a recorded conversation, defendant SOLANO contacted a supplier of airplane parts and discussed mailing the parts to Guadalajara, Mexico.

87.  On May 13, 2014, in a recorded conversation, and in coded language, an unindicted conspirator told defendant SOLANO that he was ready

to meet with defendant SOLANO to provide him with cash to purchase airplane engine starters.

88.    On May 13, 2014, in a recorded conversation, and in coded language, defendant SOLANO told an unindicted conspirator to meet him at a gas station at the intersection of Imperial Boulevard and Long Beach Boulevard in Lynwood, California.

89.    On May 13, 2014, in a recorded conversation, and in coded language, defendant SOLANO told an unindicted conspirator that he would be arriving for their meeting in a gray Sierra pick-up truck.

90.    On May 13, 2014, an unindicted conspirator provided defendant SOLANO with $26,000 in cash.

91.    On May 14, 2014, in a telephone conversation, defendant SOLANO stated that he was stopped by law enforcement in possession of $26,000.

Receipt of $60,000 in Cash

92.    On September 9, 2014, an unindicted conspirator drove into the parking lot of a restaurant at 843 Pacific Coast Highway, Harbor City, California, in a BMW Mini Cooper and parked.

93.    On September 9, 2014, defendant SOLANO drove into the parking lot of the restaurant and parked beside the BMW Mini Cooper.

94.    On September 9, 2014, the unindicted conspirator provided defendant SOLANO with $60,000 in cash that was wrapped in duct tape in the parking lot of the restaurant at 843 Pacific Coast Highway, Harbor City, California.

95.    On September 9, 2014, defendant SOLANO drove away from the parking lot at 843 Pacific Coast Highway, Harbor City, California, and engaged in counter-surveillance driving.

96.    On September 9, 2014, defendant SOLANO possessed $60,000 in

1 | cash.

2 |     97.  On September 25, 2014, defendant SOLANO notified co-conspirators

3 | that his offices were searched by law enforcement agents.

4 | Attempted Purchase Of Grumman Albatross Seaplane, Tail Number N16HU

5 |     98.  In December 2015, defendant SOLANO negotiated with sellers in

6 | Florida for the purchase of Grumman Albatross Seaplane, Tail Number N16HU,

7 | for export to Mexico.

8 |     99.  On December 21, 2015, at the direction of unindicted

9 | conspirators in Mexico, defendant SOLANO transferred $30,000 to sellers in

10 | Florida as a deposit for the purchase of the Grumman Albatross Seaplane,

11 | Tail Number N16HU.

12 |     100.  On December 26, 2015, defendant SOLANO sent an email to an

13 | unindicted conspirator in Nogales, Mexico, that defendant SOLANO made a

14 | deposit of $30,000 for the purchase of the Grumman Albatross Seaplane, Tail

15 | Number N16HU.

16 |     101.  On January 2, 2016, defendant SOLANO sent, in the Spanish

17 | language, to an unindicted conspirator in Mexico, a summary of the costs

18 | and work to be performed on the Grumman Albatross Seaplane, Tail Number

19 | N16HU.

20 | Purchase and Sale of Piper Seneca Aircraft, Tail Number N9773C

21 |     102.  In March 2017, defendant SOLANO entered into a partnership with

22 | a conspirator and Mexico-based airplane pilot for the purchase in the

23 | United States and export to Mexico of a Piper Seneca Aircraft, Tail Number

24 | N9773C.

25 |     103.  On March 25, 2017, in an email message, defendant SOLANO

26 | requested the opening of an escrow account for the purchase of the Piper

27 | Seneca Aircraft, tail number N9773C.

28 |

104. On March 25, 2017, in an email message, defendant SOLANO informed an escrow agent that he would be purchasing the Piper Seneca Aircraft, tail number N9773C, in the name of defendant SOLANO's company but for export to Mexico.

105. On April 25, 2017, defendant SOLANO and an unindicted conspirator entered into an agreement for the purchase of a Piper Seneca Aircraft, tail number N9773C, for $65,000.

106. On April 26, 2017, at the direction of defendant SOLANO, an unindicted conspirator caused $41,670 in cash, and over a period of several days, to be deposited into an escrow account for the purchase of the Piper Seneca Aircraft, tail number N9773C.

107. On June 29, 2017, in an email message, an escrow agent informed defendant SOLANO that the escrow company was continuing to hold the $41,670 for the purchase of the Piper Seneca Aircraft, Tail Number N9773C.

108. On June 29, 2017, in an email message, defendant SOLANO informed an escrow agent that defendant SOLANO intended to pay the remaining balance for the purchase of the Piper Seneca Aircraft, Tail Number N9773C, by check.

109. On August 1, 2017, defendant SOLANO caused $19,000 to be transferred to the escrow account for the purchase of the Piper Seneca Aircraft, Tail Number N9773C.

110. On August 8, 2017, defendant SOLANO sent a document to an escrow agent attempting to explain the source of the $41,670 transferred from Mexico.

111. On August 8, 2017, defendant SOLANO caused $4,930 to be transferred to the escrow account for the purchase of the Piper Seneca Aircraft, Tail Number N9773C.

112.  On August 9, 2017, defendant SOLANO sold the Piper Seneca Aircraft, Tail Number N9773C, to a Mexico-based conspirator for the stated purchase price of $1.00.

COUNT TWO

[18 U.S.C. § 1956(a)(1)(A)(i); 18 U.S.C. § 2(a)]

Beginning on a date unknown, and continuing to on or about May 17, 2014, in Los Angeles County, within the Central District of California, and elsewhere, defendants DAVID SOLANO and DARIO EDGARDO VERDUGO-AMERICANO, and others known and unknown to the Grand Jury, knowing that property involved in financial transactions represented the proceeds of some form of unlawful activity, and which property was, in fact, the proceeds of specified unlawful activity, that is, the unlawful distribution of controlled substances, in violation of Title 21, United States Code, Section 841(a)(1), knowingly conducted and attempted to conduct, and aided, abetted, counseled, commanded, induced, and procured the conduct and attempted conduct of financial transactions, namely, the transfer of funds for the purchase and sale of two airplane engine starters, with the intent to promote the carrying on of said specified unlawful activity.

COUNT THREE

[18 U.S.C. § 1956(a)(1)(A)(i); 18 U.S.C. § 2(a)]

Beginning on a date unknown, and continuing to on or about September 9, 2014, in Los Angeles County, within the Central District of California, and elsewhere, defendant DAVID SOLANO, and others known and unknown to the Grand Jury, knowing that property involved in financial transactions represented the proceeds of some form of unlawful activity, and which property was, in fact, the proceeds of specified unlawful activity, that is, the unlawful distribution of controlled substances, in violation of Title 21, United States Code, Section 841(a)(1), knowingly conducted and attempted to conduct, and aided, abetted, counseled, commanded, induced, and procured the conduct and attempted conduct of financial transactions, namely, the receipt of $60,000 in United States currency, with the intent to promote the carrying on of said specified unlawful activity.

COUNT FOUR

[18 U.S.C. § 1956(a)(1)(A)(i); 18 U.S.C. § 2(a)]

Beginning on a date unknown, and continuing to on or about May 12, 2015, in Los Angeles County, within the Central District of California, and elsewhere, defendants DAVID SOLANO and DARIO EDGARDO VERDUGO-AMERICANO, and others known and unknown to the Grand Jury, knowing that property involved in financial transactions represented the proceeds of some form of unlawful activity, and which property was, in fact, the proceeds of specified unlawful activity, that is, the unlawful distribution of controlled substances, in violation of Title 21, United States Code, Section 841(a)(1), knowingly conducted and attempted to conduct, and aided, abetted, counseled, commanded, induced, and procured the conduct and attempted conduct of financial transactions, namely, the transfer of funds for the purchase and sale of a Cessna 210M airplane, registration number N8487M, with the intent to promote the carrying on of said specified unlawful activity.

COUNT FIVE

[18 U.S.C. § 1956(a)(1)(A)(i); 18 U.S.C. § 2(a)]

Beginning on a date unknown, and continuing to on or about December 26, 2015, in Los Angeles County, within the Central District of California, and elsewhere, defendant DAVID SOLANO, DARIO EDGARDO VERDUGO-AMERICANO, and others known and unknown to the Grand Jury, knowing that property involved in financial transactions represented the proceeds of some form of unlawful activity, and which property was, in fact, the proceeds of specified unlawful activity, that is, the unlawful distribution of controlled substances, in violation of Title 21, United States Code, Section 841(a)(1), knowingly conducted and attempted to conduct, and aided, abetted, counseled, commanded, induced, and procured the conduct and attempted conduct of financial transactions, namely the transfer of funds for a downpayment in the attempted purchase of a Grumman Albatross seaplane, registration number N16HU, with the intent to promote the carrying on of said specified unlawful activity.

COUNT SIX

[18 U.S.C. § 1956(a)(1)(A)(i); 18 U.S.C. § 2(a)]

Beginning on a date unknown, and continuing to on or about August 19, 2017, in Los Angeles County, within the Central District of California, and elsewhere, defendant DAVID SOLANO, and others known and unknown to the Grand Jury, knowing that property involved in financial transactions represented the proceeds of some form of unlawful activity, and which property was, in fact, the proceeds of specified unlawful activity, that is, the unlawful distribution of controlled substances, in violation of Title 21, United States Code, Section 841(a)(1), knowingly conducted and attempted to conduct, and aided, abetted, counseled, commanded, induced, and procured the conduct and attempted conduct of financial transactions, namely, the

///
///
///
///
///
///
///
///
///
///
///
///
///
///

transfer of funds used in the purchase and sale of a Piper Seneca airplane, registration number N9773C, with the intent to promote the carrying on of said specified unlawful activity.

A TRUE BILL

_/s/_____
Foreperson

NICOLA T. HANNA
United States Attorney

LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division

SCOTT GARRINGER
Assistant United States Attorney
Deputy Chief, Criminal Division

TIMOTHY J. SEARIGHT
Assistant United States Attorney